IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES EX REL. CHYRISSA STALEY, R.N,** ) ) ) ) Plaintiff, ) ) ) v. ) ) ) **COLUMBIA/HCA HEALTHCARE CORPORATION, ET AL.,** ) ) ) ) Defendants. ) | Case No. 1:08CV00022 **OPINION AND ORDER** By: James P. Jones Chief United States District Judge |

*Mark T. Hurt, Abingdon, Virginia, for Relator Chyriss Staley, R.N.; Michael S. Kelley, Kennerly, Montgomery & Finley, P.C., Knoxville, Tennessee, and Cameron S. Bell, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendants Columbia/HCA Healthcare Corporation, now known as HCA Inc., Indian Path Hospital, Inc., and Superior Home Health of East Tennessee.*

In this qui tam action remanded to this court for trial from a multidistrict litigation court, the relator seeks reconsideration of a decision of the transferee court that dismissed a portion of the qui tam claim. Because reconsideration would be contrary to the principles of the multidistrict litigation system and to the doctrine of the law of the case, I will deny the motion for reconsideration.

I

Relator Chyrissa Staley alleges that the defendants Columbia/HCA Healthcare Corporation, now known as HCA, Inc., Indian Path Hospital, Inc., and Superior Home Health of East Tennessee, Inc. (collectively, "Columbia") violated the False Claims Act ("FCA"), 31 U.S.C.A. §§ 3729-3733 (West 2003 & Supp. 2008) by defrauding Medicare at the geriatric/psychiatric unit of Indian Path Hospital in Kingsport, Tennessee.[1]  Although originally filed in this court in 1997, the Judicial Panel on Multidistrict Litigation ("JPML") consolidated the action with similar cases from other districts in the United States District Court for the District of Columbia ("D.C. District Court"), where pretrial proceedings lasted for almost ten years. There, the defendants successfully moved to dismiss two claims in the First Amended Complaint for lack of subject matter jurisdiction. *See United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 54 (D.D.C. 2007).

The dismissed claims had alleged that:

> 36. Upon information, defendant Columbia conducted one or more meetings of chief financial officers (CFOs) and certain other officials of the hospitals it owned and/or operated which had Geropsych units.

---

[1] The Complaint originally included Debra Hockett, M.D., and Linda Thompson, M.D., as relators.  However, Hockett is now deceased and Thompson was dismissed. Additionally, the parties have agreed that the present motion does not concern the defendant Horizon Mental Health Management, Inc.

- 2 -

> Jim Matney, CFO of Indian Path, attended on behalf of his hospital. There, Matney and his counterparts were instructed in the use of, and told to use techniques that would inflate the TEFRA charges in their respective Geropscyh units.
>
> 37. Still upon information, these Geropsych units, acting in accordance with Columbia's instructions, employed their techniques and perhaps others for inflating TEFRA charges and as a result overcharged Medicare at the subject hospitals. The overcharging techniques included those which are described in paragraphs 15 through 35 of this Complaint.

(Relator's First Am. Compl. ¶¶ 36-37.) The original Complaint alleged that fraud had occurred only at Indian Path Hospital. Paragraphs thirty-six and thirty-seven of the First Amended Complaint added allegations that other Columbia locations also engaged in similar fraud.

The D.C. District Court held that these claims were barred by the public disclosure provision of the FCA. *See Hockett*, 498 F. Supp. 2d at 54. That provision states:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations . . . in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

> (B) . . . '[O]riginal source' means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section. . . .

31 U.S.C.A. § 3730(e)(4) (West 2003). In the D.C. Circuit, this provision "is triggered whenever the relator files a complaint describing allegations or transactions substantially similar to those in the public domain, regardless of the actual source for the information in the particular complaint." *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 682 (D.C. Cir. 1997).

The D.C. District Court found that paragraphs thirty-six and thirty-seven "merely add[ed] slight details and variations" to a fraud explained in a December, 1997, *New York Times* article.[2] *Hockett*, 498 F. Supp. 2d at 50. The relator could not qualify as an original source of the claims because her "only purported knowledge bottom[ed] on hearsay statements which require inference after inference to support a claim of fraud," and was not "direct and independent" as required by the statute. *Id.* at 54. Moreover, the relator neglected to "voluntarily disclose[] to the government [any information she did have] prior to her filing of the amended complaint." *Id.* For these reasons, the court held that public disclosure bar applied, and therefore

---

[2] Kurt Eichenwald, *HEALTH CARE'S GIANT: Artful Accounting — A special report; Hospital Chain Cheated U.S. On Expenses, Documents Show*, N.Y. Times, Dec. 18, 1997, at A1.

- 4 -

dismissed the claims in paragraphs thirty-six and thirty-seven for lack of subject matter jurisdiction. *Id.* at 54-55.

The relator has now asked this court to reconsider that dismissal. The issues have been briefed and argued and the Motion to Reconsider is now ripe for decision.

II

The purpose of the multidistrict litigation system would be better served if this court did not reconsider the D.C. District Court's dismissal of claims thirty-six and thirty-seven. Furthermore, that decision is the law of the case, and should be upheld for that reason alone. Accordingly, I will deny the relator's Motion to Reconsider.

A

The multidistrict litigation system aims to simplify pretrial proceedings in multidistrict cases. Reconsideration of the D.C. District Court's decision would hinder this effort and would conflict with the rationale exposed in *In re Food Lion, Inc., Fair Labor Standards Act "Effective Scheduling" Litigation*, 73 F.3d 528 (4th Cir. 1996).

Under the multidistrict litigation statute, civil cases from different districts that involve common questions of fact may be transferred to a single district court for consolidated pretrial proceedings. *See* 28 U.S.C.A. § 1407(a) (West 2006); *In re*

*Food Lion, Inc.*, 73 F.3d at 532-33. The JPML selects the cases to consolidate. 28 U.S.C.A. § 1407(a). It also approves suggestions by the transferee court to remand cases to the district where they were originally filed. *Id.* By this process the JPML seeks to further "the convenience of parties and witnesses and [to] promote the just and efficient conduct" of associated actions. *Id.* In essence, the multidistrict litigation statute streamlines pretrial proceedings to avoid "conflicting contemporaneous pretrial rulings by coordinating district and appellate courts in multidistrict related civil actions" and to conserve judicial resources. 17 James Wm. Moore, *Moore's Federal Practice*, *Civil* § 112.07(2)(c) (3d ed. 2008).

The case of *In re Food Lion, Inc.* involved issues similar to those raised here. Several groups of former employees filed claims against Food Lion under the Fair Labor Standards Act in the Fourth, Sixth, and Eleventh Circuits. The JPML consolidated pretrial proceedings in the Eastern District of North Carolina. That court dismissed approximately half of the plaintiffs' claims. On remand, the transferor court reconsidered the transferee court's grant of summary judgment and certified final judgment for some of the dismissed plaintiffs under Federal Rule of Civil Procedure 54(b). As a result, those plaintiffs could immediately appeal while others in different districts had to wait. The Fourth Circuit refused to decide the

appeal on the merits since it was "the sort of piecemeal litigation that the multidistrict scheme was intended to discourage." 73 F.3d at 532.

In doing so, the Fourth Circuit noted the remarks made by one commentator concerning the same issue this court currently confronts:

> It would be improper to permit a transferor judge to overturn orders of a transferee judge even though error in the latter might result in reversal of the final judgment of the transferor court. If transferor judges were permitted to upset rulings of transferee judges, the result would be an undermining of the purposes and usefulness of transfer under Section 1407 for coordinated or consolidated pretrial proceedings because those proceedings would then lack the finality (at the trial court level) requisite to the convenience of witnesses and parties and the efficient conduct of actions.

*Id.* at 531 (quoting Stanley A. Weigle, *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts*, 78 F.R.D. 575, 577 (1978)).

Of major concern in *In re Food Lion, Inc.* was the potential for the transferee's "decisions [to] be reconsidered by each of the transferor courts and reviewed by as many as three courts of appeal." *Id.* at 533. Although that concern is not implicated here,[3] the rationale applied is nonetheless relevant. The Fourth Circuit intended "to foster the transfer statute's goals" by refusing to consider the merits of the instant appeal; it wanted to avoid conflicting rulings on the same pretrial decision by

---

[3] All decisions made in this case will be reviewed by the Fourth Circuit if appealed.

- 7 -

different appellate courts. *Id.* at 531. This case presents a similar opportunity—leaving undisturbed the D.C. District Court's decision would avoid a potential conflict between coordinate trial courts deciding the same issue in the same case. Restraint ensures uniform and efficient pretrial proceedings, a result clearly intended by the multidistrict litigation system.

The court in *In re Food Lion, Inc.* recognized that "[t]he better practice . . . would have been for the dismissed parties to have requested, and for [the transferee judge] to have directed, the entry of Rule 54(b) final judgments prior to filing the suggestion of remand." *Id.* at 533. For this reason, it announced that "transferee courts in this circuit *must*, at some point prior to filing a suggestion of remand, enter final judgment under Rule 54(b) with regard to any decision or order of that court that fully disposes of fewer than all the claims or the rights and liabilities of fewer than all the parties." *Id.* (internal quotation marks omitted).

The relator suggests that this directive demonstrates that *In re Food Lion, Inc.* is inapposite to the situation here. She maintains that *In re Food Lion, Inc.* did not contemplate a decision by a transferor court to reconsider prior rulings, but only the decision of a transferee court to remand consolidated cases without granting dismissed parties final judgments under Rule 54(b).

Nevertheless, the Fourth Circuit "believe[d] that permitting the *transferor courts* (and, possibly, the Courts of Appeal for the Sixth and Eleventh Circuits) to reconsider the transferee court's summary judgment orders will frustrate the aims of § 1407." *Id.* at 532 (emphasis added). Given this language, it is more plausible to conclude that the court viewed the reconsideration of pretrial proceedings alone as contrary to the intent of the multidistrict litigation scheme.

The relator had the option of asking for a Rule 54(b) certification from the D.C. District Court for an interlocutory appeal to the D.C. Circuit before remand. Instead, she has attempted to relitigate the issue here, perhaps because of her view that Fourth Circuit law demands a more favorable outcome. She contends that the Fourth Circuit will reverse the D.C. District Court's decision because it did not apply the appropriate Fourth Circuit standard for the public disclosure bar.[4] Thus, this court should avoid certain reversal by modifying the D.C. District Court's ruling.

I disagree. Mere suspicion that a prior decision is incorrect does not justify the costs incurred by revisiting issues already litigated. To assume at this point that the case will be appealed is premature. To further assume that the Fourth Circuit will

---

[4] Unlike the D.C. Circuit, the Fourth Circuit holds that only an allegation *derived from* a public disclosure trips the jurisdictional bar. *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1349 (4th Cir. 1994); *See Findley*, 105 F.3d at 682-685 (explaining the difference between the Fourth Circuit and D.C. Circuit interpretations of the public disclosure bar).

- 9 -

reverse the D.C. District's application of D.C. Circuit law is at best speculative. And even if these assumptions hold true, better suited is an appellate court, rather than a coordinate district court, to reverse the ruling.

B

Reconsideration of the D.C. District Court's decision would not only impair the multidistrict litigation scheme, but it would also conflict with the well-settled doctrine of law of the case. There has been no change in controlling authority that justifies departure from this principle, nor should application of the doctrine be limited here by the fact that the D.C. District Court dismissed the claims for lack of subject matter jurisdiction.

Like the multidistrict litigation system, the law of the case doctrine supports "finality and efficiency [in] the judicial process." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). It "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). The doctrine requires courts to uphold earlier decisions in the same case unless: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Sejman v.*

*Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988) (internal quotation marks omitted).

The relator maintains that controlling authority has made a contrary decision of law. The D.C. District Court applied the D.C. Circuit's interpretation of the public disclosure bar, whereas this court must follow the Fourth Circuit's interpretation. Thus, according to the relator, controlling law changed when the case was remanded from the D.C. District Court to this court.

There is no authority for the proposition that a circuit split qualifies as a change in controlling law. Rather, "federal law is presumed to be consistent and any inconsistency is to be resolved by the Supreme Court." *Bradley v. United States*, 161 F.3d 777, 782 n.4 (4th Cir. 1998); *see EEOC v. Northwest Airlines, Inc.*, 188 F.3d 695, 700 (6th Cir. 1999) ("Federal law is presumed to be uniform, whether or not it is in fact.").

Nor has the Supreme Court's recent interpretation of the "original source" exception to the public disclosure bar affected the Fourth Circuit's "derived from" standard or the D.C. Circuit's "substantially similar" standard. *See Rockwell Int'l Corp. v. United States*, 127 S.Ct. 1397, 1410 (2007) (holding that relator must establish subject matter jurisdiction for each individual claim asserted). In fact, the Fourth Circuit recently reaffirmed its "derived from" standard with *Rockwell* in mind.

*See United States ex rel. Wilson v. Graham County Soil & Water Conservation Dist.*, 528 F.3d 292, 309 (4th Cir. 2008) ("When considering these jurisdictional questions . . . , as the Supreme Court made clear in *Rockwell*, it is not enough for a *qui tam* plaintiff to show that jurisdiction exists over one of her claims."). Similarly, in this case, the D.C. District Court read *Rockwell* to support the "substantially similar" standard it applied to preclude subject matter jurisdiction. *See Hockett*, 498 F. Supp. 2d at 38-39 n.6 ("[*Rockwell*] strongly suggests that the D.C. Circuit's broader view of what constitutes a disclosure is correct, as that view . . . construes federal jurisdiction more narrowly.").

The Supreme Court has not addressed the split between the Fourth Circuit and D.C. Circuit and application of the public disclosure bar must be "presumed to be uniform, whether or not it is in fact." *Northwest Airlines, Inc.*, 188 F.3d at 700. Therefore, controlling authority has not made a contrary decision since the D.C. District Court's dismissal of the relator's claims.

The relator also contends that this court should depart from law of the case doctrine because the importance of "getting it right" outweighs the concerns for finality and judicial economy. For support, the relator looks to *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 516 (4th Cir. 2003), which held that a district court abused its discretion when it rejected the defendant's motion to

reconsider a ruling that granted the plaintiffs standing. Law of the case principles were merely discretionary, and therefore could not "limit the power of a court to reconsider an earlier ruling. . . . in the context of subject matter jurisdiction issues, which call into question the very legitimacy of a court's adjudicatory authority." *Id.* at 515.

Notwithstanding *American Canoe*, law of the case principles still merit close attention here. That case did not involve multidistrict litigation. This case does. *American Canoe* dealt with a "district court's decision . . . rendered early in the litigation, before there had been much factual development [or] discovery . . . ." *Id.* at 516. Here, discovery is complete. The defendants in *American Canoe* offered new evidence in support of their motion to reconsider. The relator has not done the same, nor has she indicated that any is forthcoming. Indeed, "[t]here is no reason to apply law-of-the-case principles less rigorously to transfer decisions that implicate . . . jurisdiction. Perpetual litigation of any issue — jurisdictional or nonjurisdictional — delays, and therefore threatens to deny, justice." *Christianson*, 486 U.S. at 816 n.5.

- 13 -

III

Review of the D.C. District Court's decision would be contrary to the principles of both the multidistrict litigation system and law of the case doctrine. Accordingly, it is **ORDERED** that the Motion to Reconsider (#16) is DENIED.

      ENTER: November 23, 2008

      /s/ JAMES P. JONES
      Chief United States District Judge